USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 21, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH FERRARA,     :
       :
       Plaintiff,     :
       :     13 Civ. 1221 (KBF)
       -v-     :
       :     <u>OPINION & ORDER</u>
THE CITY OF YONKERS,     :
       :
       Defendant.     :
------------------------------------------------------------X
KATHERINE B. FORREST, District Judge:

Before the Court are cross-motions for summary judgment on an employment discrimination action commenced by Joseph Ferrara on February 21, 2013. (ECF No. 1.) The motions became fully briefed on May 18, 2015. Plaintiff, a male detention officer in the Yonkers Police Department, was laid off when the department eliminated funding for one "Detention Officer (Male)" position due to budget cuts. Plaintiff was laid off because he was the least senior male detention officer; however, a female detention officer who was less senior than plaintiff kept her job as "Detention Officer (Female)". Plaintiff claims that maintaining two separate, sex-based detention officer positions amounted to discrimination based on sex and that sex is not a bona fide occupational qualification for the detention officer positions. This Court disagrees. Accordingly, and for the reasons set forth below, plaintiff's motion is DENIED and defendant's motion is GRANTED.

I.     FACTUAL BACKGROUND

The facts in this case are undisputed. The issue before the Court is a purely legal one.

1

The Yonkers Police Department, through its Civil Service Commission, employs two categories of detention officers – "Detention Officer (Male)" ("D.O. Male") and "Detention Officer (Female)" ("D.O. Female"). The positions share the same qualifications and job descriptions with one exception: the distinction as to sex. (Compl. Exs. E and F.)

On June 30, 2010, due to budget cuts, funding for two existing male detention officer positions at the Yonkers Police Department was abolished. At the same time, funding for one existing position for a female detention officer was abolished. As a result, Ferrara and two other Yonkers Police Department D.O.s were laid off. The lay-offs were based on seniority within the given job titles.

At the time of his temporary lay-off, and continuing to date, Ferrara held the job title of "Detention Officer (Male)." As of June 30, 2010, Ferrara was the least senior male filling that position. He was senior to Mary Moriarty O'Keefe, who was employed in the position of "Detention Officer (Female)." The qualifications for that position required that the detention officer be female. O'Keefe was not laid off.[1]

When he learned that he would be laid off and a less senior female would not, Ferrara complained that he was subject to unlawful employment discrimination. The City of Yonkers, Department of Human Resources responded:

> You currently hold the position of Detention Officer (Male). This title is separate and distinct from Ms. O'Keefe's title of Detention Officer (Female). While both titles have the same duties, they are still different in terms of Civil Service . . .

---

[1] Plaintiff was reinstated in his position on July 19, 2010. The female D.O. who had been laid off at the same time as Ferrara (Patricia McEniry) was not reinstated until September 17, 2010.

2

(Compl. Ex. D.)  In sum, the D.O. (Female) position is entitled to fulfill all the job responsibilities of a D.O. (Male); but certain responsibilities of the D.O. (Female), may only be fulfilled by a female (though such responsibilities could be fulfilled by a female police officer, a position different from that of detention officer).  For instance, only a female may search a female detainee.  9 NYCRR § 7502.1(d).  In addition,

> Supervision of female prisoners shall be accomplished by a matron, and a female prisoner shall not be placed in or removed from a detention area unless the matron is present.  The matron shall retain the key for the detention area for females and no male person shall be permitted to enter an area where female prisoners are detained unless accompanied by the matron.

9 NYCRR § 7504.1(e). There are both male and female detention officers on the job (that is, working a shift) at any given time.  There has never been an instance where a female detainee could not be searched because a female was unavailable to perform such search.

II.     LEGAL STANDARDS

Based on the maintenance of two separate, sex-based detention officer positions, plaintiff claims that defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (First Cause of Action), § 1983 (Second Cause of Action), and the New York State Human Rights Law, Executive Law § 290 et seq. ("NYSHRL") (Third Cause of Action).

   A.   Standard Of Review

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine

3

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted).

B.  Title VII

Title VII prohibits discrimination in the workplace based on sex under most circumstances. There is an exception, however, when sex is a "bona fide occupational qualification reasonably necessary to the normal operation of the business enterprise." § 2000e-2(e). The question for this Court is whether sex is a bona fide occupational qualification for detention officers with the Yorkers Police Department. This question displaces what would otherwise be the usual four part test for discrimination claims set forth under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In essence, the question of whether sex is a bona fide occupational qualification substitutes for the second and fourth McDonnell Douglas factors: whether the employee is qualified for a position, and whether an adverse employment action occurred under circumstances giving rise to an inference of discrimination. In short, if sex is a bona fide occupational qualification, then one of another sex is unqualified for such position, and while that may constitute clear evidence of discrimination on the basis of sex, such discrimination is privileged as a matter of law.

In Western Air Lines v. Criswell, 472 U.S. 400 (1985), the Supreme Court addressed the factual circumstances supporting a bona fide occupational qualification. There, a regulation of the Federal Aviation Administration ("FAA") prohibited individuals over the age of 60 from serving as pilots or first officers on a commercial flight. Id. at 404. Western Air Lines implemented a retirement plan based on that regulation requiring crew members to retire at the age of 60. Upon

5

reaching the age of 60, Charles Criswell and another captain in a flight crew requested reassignment to the position of flight engineer (a position not subject to the FAA regulation). Western Air Lines denied their request and the lawsuit followed. Id. at 404-05.

The FAA justified its regulation on the basis that age acted as a reasonable proxy for safety-related job qualifications. Western Air Lines then implemented a retirement policy based on the regulation and derived from a similar rationale. The Supreme Court found that it was unreasonable to assume that the actual capabilities of all individuals who had reached the age of 60 were similar, and that the age of 60 signaled a necessary decline. Id. at 406. The Court adopted a standard set forth in a Fifth Circuit case, Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (1976), for showing when age qualifications are "reasonably necessary . . . to the particular business". That case held that an "employer could establish that it 'had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all [persons over the age qualifications] would be unable to perform safely and efficiently the duties of the job involved.'" Western, 472 U.S. at 414 (quoting Tamiami, 531 F.2d 235 (internal quotations omitted)). Alternatively, the employer could establish that age was "a legitimate proxy safety-related qualifications by proving that it is 'impossible or highly impractical' to deal with older employees on an individualized basis." Id. at 414.

Applying Tamiami to the case before it in Western, the Court found the evidence did not support the conclusion that age was a necessary proxy for good

6

health or risk of incapacitation.  Id. at 418-21.  The Second Circuit applied the Western Air Lines and Tamiami standard in, inter alia, Hahn v. City of Buffalo, 770 F.2d 12, 16 (2d Cir. 1985) (superseded on other grounds by a later amendment to the ADEA).

III.  DISCUSSION

It is undisputed that plaintiff was laid off because he was the least senior "Detention Officer (Male)".  The question for this Court is therefore whether the sex requirement in position "Detention Officer (Female)" is based on a bona fide occupational qualification.  It is.

As set forth above, New York State law mandates that certain tasks relating to female detainees must be performed by female detention officers.  Plaintiff does not dispute this point.  Rather, plaintiff's argument is that defendant cannot demonstrate that sex is a bona fide occupational qualification when there has never been a shortage of females to perform tasks which, by law, require a female.  Plaintiff asserts that female police officers could (and do) fill in if there is no available female detention officer.  Plaintiff's argument is not, therefore, that sex is not and cannot be a bona fide occupational qualification – but rather that either (1) it may be utilized only to a lesser level than it is here, or (2) since there are always likely to be female police officers, no sex-based qualification is even necessary.  This argument applies an incorrect legal standard.

The law requires that sex be a reasonably necessary requirement for the performance of specific duties in order to be a bona fide occupational qualification.

See <u>Dothard v. Rawlinson</u>, 433 U.S. 321, 336-37 (1977) (holding that a regulation banning women from certain positions in Alabama prisons was within the confines of the bona fide occupational qualification, given the unique facts of the "rampant violence" of the state's maximum-security male penitentiaries). There is no doubt that, under current New York law, it is. Females are necessary for the search, oversight and movement of female detainees. 9 NYCRR §§ 7502.1(d) and 7504.1(e). Under current state law, males cannot perform such tasks alone. This distinguishes the case from that in <u>Western</u>. In <u>Western</u>, age was a characteristic which was accompanied by highly varied personal capabilities – and the Court was rightly concerned with a rule which treated all 60 year olds the same, and as necessarily more infirm than younger counterparts. The same is not true here. Here, sex is a known characteristic; plaintiff is male.

The law does not require – nor suggest that it is appropriate – that this Court sit as a super human resources department to determine the precise number of individuals the Yonkers Police Department should and may hire to fill the position of "Detention Officer (Female)". No doubt there could be a point when use of a sex-based job qualification could go too far – for instance, if only female detention officers were hired in a police department because they could fulfill the responsibilities of both female and male detention officers. But such an extreme case is not before the Court.

The Court also recognizes plaintiff's factual assertion that there has never been a situation in which the Yonkers Police Department has not been able to

perform a timely search of a female detainee due to the lack of an on-duty female. That success is not, however, reason to require a limit on the number of individuals who may be hired into the D.O. (Female) position. The Yonkers Police Department is not required to confront a staffing problem (e.g. having no female available) to justify filling a "Detention Officer (Female)" position. Moreover, it is no answer to suggest that because female police officers can physically perform the duties of a lower level position detention officer, they should be made to do so on a regular basis. Such a result carries its own discrimination issues.

In sum, as this Court finds that Detention Officer (Female) is a bona fide occupational qualification, plaintiff's claim must fail. He was not qualified to fill that position and therefore his lay off was not based on unlawful discrimination. For those same reasons, plaintiff's § 1983 claim and New York state law claims also fail. See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) ("a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII").

IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is DENIED and defendant's motion is GRANTED.

The Clerk of Court is directed to close the motions at ECF Nos. 28 and 41 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            May 21, 2015

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge